# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| SCOTT ELLINGTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HAYWARD BAKER, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | No. 2:18-cv-3436-DCN <br><br> **ORDER** |

The following matter is before the court on defendant Hayward Baker, Inc.'s ("HBI") motion to dismiss and compel arbitration, ECF No. 5, and motion to dismiss the amended complaint and compel arbitration, ECF No. 9. For the reasons set forth below, the court dismisses the amended complaint and compels arbitration.

## I. BACKGROUND

Plaintiff Scott Ellington ("Ellington") is the founder of Ellington Cross, LLC ("EC"), a construction company that specializes in the design and installation of Earthquake Drains ("EQD"). EQD technology mitigates liquefaction, which occurs when sand loses strength during earthquakes and often results in damage to structures that sit on the sand. In 2010, HBI acquired assets from Nelix Construction, which included the EQD patent, subject to Ellington and EC's exclusive license to use the patent in the southeastern United States. As a result, Ellington alleges, HBI faced little to no EQD competition except in the southeastern region of the country, where Ellington and EC still sold EQD systems. To eliminate this competition, Ellington alleges, HBI offered to enter into an agreement with HBI so that EC would operate as "Ellington Cross, a Division of Hayward Baker." Am. Comp. ¶ 17. The purported advantage of this arrangement for

1

Ellington was that he would be able to continue to run and expand his business nationwide while HBI covered the administration and overhead expenses. Ellington alleges that HBI engaged in a fraudulent scheme to acquire EC from Ellington by inducing Ellington to sell EC's trade name, assets, and accounts to HBI in exchange for Ellington's employment with HBI and no payment for EC's goodwill or value. Instead, Ellington alleges, HBI fraudulently convinced Ellington that it would pay for EC's goodwill through an Employment and Non-Compete Agreement, in which Ellington would have the opportunity to "earn out" HBI's goodwill payment over a period of five years. Ellington's "earn-out" compensation was based on profits derived from EQD technology.

This transaction was completed using an Asset Purchase Agreement ("APA") and an Employment and Non-Compete Agreement ("EA"), which the parties signed on August 17, 2015. Ellington then alleges that HBI engaged in "individual micro-frauds" that were designed to deprive Ellington of the benefits he was to receive under the APA. Id. ¶ 25. Ellington makes various allegations about HBI's accounting practices and management decisions that Ellington alleges undermined the terms of the parties' agreement. Ellington eventually came to believe that "HBI had intended to simply eliminate EC as a competitor without HBI ever actually intending to allow Ellington to succeed in the national market." Id. ¶ 47. Throughout this time, there were also various disputes about the calculation of Ellington's earn-out compensation. Ellington worked for HBI until August 22, 2017, when he either resigned or was "constructively

terminated."[1]  Id. ¶ 54.  Ellington alleges that pursuant to the APA and EA, HBI was required to submit an earn-out calculation for Ellington, and it failed to do so.

Ellington filed his complaint in the Court of Common Pleas in the County of Charleston, South Carolina on August 23, 2018.  The complaint asserted causes of action for: (1) fraud; (2) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"); (3) negligence, negligent misrepresentation, and/or negligent supervision; (4) breach of contract; (5) breach of contract accompanied by fraudulent act and/or fraudulent inducement; (6) unjust enrichment/quantum meruit/restitution; (7) a declaratory judgment; and (8) conversion.  HBI removed the case to federal court on December 13, 2018.  HBI then filed its first motion to dismiss and compel arbitration on December 20, 2018.  ECF No. 5.  On January 3, 2019, Ellington responded, ECF No. 6, and also filed an amended complaint, ECF No. 7.  The amended complaint changed the fifth cause of action to breach of contract accompanied by fraudulent act and added causes of action for fraud in the inducement and rescission.  Other than these changes, there are no substantive changes to the complaint.[2]  HBI replied to Ellington's response on January 10, 2019, ECF No. 8, and filed another motion to dismiss and compel arbitration based on the amended complaint on January 16, 2019, ECF No. 9.[3]  Ellington responded on January 20, 2019.  ECF No. 11.  The motions are ripe for review.

---

[1] The parties dispute this point; however, it is not material to the resolution of the issues before the court.

[2] The numbering of the paragraphs begins to differ at ¶ 72 because the original complaint did not number the paragraph that should have been ¶ 73.  The amended complaint added a number to this paragraph.  Therefore, the amended complaint is one paragraph number off from the original complaint, starting at ¶ 73.

[3] Given the lack of substantive changes in the allegations in the amended complaint, HBI simply renewed its arguments in its original motion to dismiss and compel arbitration.

3

## II. STANDARD

Section 4 of the Federal Arbitration Act ("FAA") provides in part that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. A court shall compel arbitration pursuant to the FAA if a party demonstrates:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002). The party opposing arbitration bears the burden of proving the claims at issue should not be sent to arbitration. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000). In determining whether the claims should be sent to arbitration, courts have the authority to evaluate whether an agreement to arbitrate was formed. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967) ("[A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate."). Therefore, "a court may order arbitration only when it 'is satisfied that the parties agreed to arbitrate.'" Lorenzo v. Prime Commc'ns, L.P., 806 F.3d 777, 781 (4th Cir. 2015) (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010)).

In the Fourth Circuit, a litigant seeking arbitration should move to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Brown v. Five Star Quality Care, Inc., 2016 WL 8710474, at *2 (D.S.C. Jan. 8, 2016) (citing Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 365 n.9 (4th Cir. 2012)). "When considering a motion under Rule 12(b)(3), the Court may consider evidence outside the

pleadings, but the facts are viewed light most favorable to the plaintiff because a plaintiff need only make a prima facie showing of proper venue to survive a motion to dismiss." Id.

### III. DISCUSSION

HBI argues that the allegations in this case all arise out of the EA, and because the EA contains an arbitration clause, the case must be sent to arbitration. Of the four elements required for the court to compel arbitration, see Adkins, 303 F.3d at 500–01, the only one disputed by Ellington is the second element—whether there is an agreement to arbitrate. Ellington argues that the APA and EA form the parties' entire agreement and have conflicting provisions as to whether the parties agreed to arbitration. Ellington contends that these conflicting provisions make the agreement to arbitrate ambiguous, which evinces a lack of mutual assent and means the parties never agreed to arbitrate. The court disagrees and compels arbitration.

**A. Whether Conflicting Provisions in the EA and APA Exist**

To show that the parties did not agree to arbitrate, Ellington argues that the EA and APA form one contract, and that the contract contains provisions that conflict with the arbitration provision. The EA is an exhibit to the APA, and the APA states that the APA and its exhibits constitute the entire agreement. APA § 7.3. Therefore, the APA and EA, as well as the other exhibits to the APA, together form the agreement between Ellington and HBI. The arbitration provision is found in the EA, and it states that

> [a]ny dispute arising out of or relating to this Agreement or its breach, shall be subject to and decided by arbitration in accordance with the rules of the American Arbitration Association "the AAA" to be held in Charleston County, South Carolina. Demand for arbitration shall be sent in writing to the adverse party and to the AAA. The award rendered by the arbitrator or arbitrators shall be final and binding upon all parties. Judgment may be

5

> entered upon the award in accordance with applicable law in any court having jurisdiction thereof. Nothing in this Section 7.k. shall prevent the [HBI] from directly seeking injunctive relief with a court of proper jurisdiction against [ ] Ellington as set forth under Section 5.

EA § 7(k). HBI argues that the EA can be enforced separately from the APA, and that because all of Ellington's claims arise out of his employment with HBI, the court need not consider the other allegedly conflicting provisions cited by Ellington, all of which appear in the APA. However, Ellington's allegations do not all relate to his employment. For example, under the SCUTPA cause of action, Ellington alleges that HBI "established a pattern and conduct of engaging in materially fraudulent and deceitful misrepresentations, management and accounting practices . . . aimed at acquiring and integrating its competitors out of the marketplace, specifically Ellington and EC." Am. Comp. ¶ 63. This allegation relates to HBI's acquisition of EC, which occurred under the APA. Other examples include allegations that HBI was negligent "[i]n omitting material information from [Ellington] about [HBI's] intended business practices which would practically prevent [Ellington] from developing EQD technology and/or profiting from the same" and [i]n omitting material information about [HBI's] business and accounting practices which, if known to [Ellington], would have been relevant to his decision to enter the APA and/or Employment/Non-Compete." Id. ¶ 68. Therefore, Ellington's allegations relate to both the APA and the EA, and because the APA explicitly states that the parties' entire agreement includes exhibits to the APA, the court will consider both the APA and the EA.

Ellington cites to various portions of the APA that he argues are inconsistent with a requirement to arbitrate. He first argues that it is contradictory that there is an arbitration provision in the EA and no arbitration provision in the APA; however, as

Ellington also notes, the APA and EA are considered one agreement. Therefore, the APA does not need an arbitration provision, because the EA has one. The same is true regarding Ellington's argument that the APA does not contain a notice that the agreement is subject to binding arbitration, as required by South Carolina law. The EA has the required notice, and because the APA and EA constitute one agreement, the APA does not need a notice as well. Ellington then identifies various provisions of the APA that he argues contradict the arbitration provision, making the agreement to arbitrate ambiguous. The court will address each alleged conflicting provision but ultimately finds that none of the provisions conflict with the arbitration clause.

### 1. Indemnification Provisions

Ellington contends that the existence of indemnification provisions contradicts a requirement to arbitrate. The first indemnification provision requires EC/Ellington to indemnify HBI "against any and all losses, costs, claims, actions, <u>suits</u>, proceedings, settlement payments, and fines . . . sustained, incurred, paid or required to be paid by any person in [HBI], <u>whether or not related to a third party claim</u>." APA § 5.2 (emphasis added by Ellington). Similarly, the other indemnification provision requires HBI to indemnify EC/Ellington "against any and all [l]osses sustained, incurred, paid or required to be paid by [ECI/Ellington], whether or not related to a third party claim." <u>Id.</u> § 5.3. Ellington argues that the word "suit" and the requirement of indemnification "whether or not related to a third-party claim" are inapposite to arbitration, and therefore, these provisions conflict with the arbitration provision. However, as the provision indicates, the indemnification provision contemplates claims by a third party as well as claims between HBI and EC/Ellington. The third party would not be bound by the arbitration

7

provision; therefore, there could be a lawsuit by a third party against either party to the agreement. The inclusion of the word "suit" simply anticipates a potential lawsuit by a third party not bound by the arbitration provision. As such, the inclusion of the word "suit" does not contradict the arbitration provision that requires the parties to the agreement to arbitrate.

### 2. Liquidated Damages

The APA provides for liquidated damages in the event Ellington breaches the EA. APA § 6.1. Ellington argues that liquidated damages are "typical for a litigation type claim," meaning this provision contradicts the arbitration provision. However, as HBI argues, an arbitrator can award liquidated damages. See Choice Hotels Int'l, Inc. v. Chewl's Hosp., Inc., 91 F. App'x 810, 817 (4th Cir. 2003) (holding that an arbitrator properly awarded liquidated damages pursuant to the liquidated damages clause in the parties' contract). Therefore, the liquidated damages provision here is not inconsistent with a requirement to arbitrate.

### 3. Attorney's Fees

Next, Ellington argues that the attorney's fees provisions conflict with an arbitration requirement. The APA provides that the prevailing party in "any legal action or other proceeding relating to this Agreement" is entitled to recover reasonable documented expenses, including attorney's fees and expenses, from the other party. APA §§ 7.1, 7.12. Ellington highlights the phrase "legal action" as inconsistent with arbitration. However, even with a requirement to arbitrate, the parties may still become involved in legal action, such as post-arbitration legal challenges or the current legal action seeking to compel arbitration. See Gen. Elec. Capital Corp. v. Union Corp Fin.

Grp. Inc., 142 F. App'x 150, 153 (4th Cir. 2005) ("The arbitration clause in the Broker Agreement does not contradict the litigation clause because 'the event of legal action' may still exist either to compel arbitration or to raise post-arbitration legal challenges."). Therefore, the court finds that this provision does not conflict with the arbitration clause.

### 4. Injunctive Relief

The injunctive relief provision of the APA provides that

> in the event of a breach of any provision of this Agreement, <u>the aggrieved party or parties may elect to institute and prosecute proceedings in any court of competent jurisdiction</u> to enforce specific performance or to enjoin the continuing breach of such provision without the requirement of a posting of a bond, <u>as well as to obtain damages for breach of this Agreement</u>. By seeking or obtaining any such relief, the aggrieved party shall not be precluded from seeking or obtaining any other relief to which it may be entitled.

APA. § 7.6 (emphasis added by Ellington). Ellington argues that this provision directly contradicts any arbitration requirement because it permits a party to institute a proceeding in court that allows a party to go to court to seek injunctive relief <u>and/or</u> damages. Therefore, Ellington argues, this clause contemplates a party going to court to obtain damages. HBI contends that this clause is not inconsistent with arbitration and should be interpreted so that when a party seeks injunctive relief for the breach of the agreement, the party can <u>also</u> obtain damages for the breach. The court agrees with HBI's interpretation. First, this provision is entitled "Injunctive Relief." If the purpose of the provision was also to provide a party the opportunity to obtain damages in court generally, it would not have been included in the "Injunctive Relief" provision. Moreover, an injunctive relief provision is not inconsistent with an arbitration provision. A court has the power to grant injunctive relief in an arbitrable dispute pending arbitration. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1055

9

(4th Cir. 1985). Therefore, this provision of the APA does not conflict with the arbitration provision.

### 5. Waiver of Jury Trial

Finally, Ellington argues that the APA provision in which the parties waived their right to a jury trial contradicts the arbitration provision. Yet submitting to arbitration is, by its very nature, a waiver of a jury trial, because the claim is heard by the arbitrator and not a jury. See Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 307 (4th Cir. 2001) ("[L]oss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate."). Therefore, this argument is unconvincing.

### B. Ambiguity as a Lack of Mutual Assent

As discussed above, the court does not find that any of the provisions cited by Ellington conflict with the arbitration provision. Moreover, even assuming that there were provisions in the APA and EA that conflicted with the arbitration provision, making the agreement to arbitrate ambiguous, there appears to be no basis in South Carolina law that equates ambiguity in a contract to a lack of mutual assent. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Ellington cites to several South Carolina cases describing what makes a contract ambiguous, but these cases were about whether summary judgment was proper, not whether ambiguity evinced a lack of mutual assent. See S. Glass & Plastics Co. v. Kemper, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012) (holding that the trial court did not err in granting summary judgment because the contract at issue was unambiguous); Hawkins

10

v. Greenwood Dev. Corp., 493 S.E.2d 875, 879 (S.C. Ct. App. 1997) (holding that the contract at issue was ambiguous and therefore determining the meaning of the contract was properly submitted to the jury).

Indeed, Ellington states that he "has found no State decisional law directly on point to this [sic] issues." ECF No. 6 at 6. Instead, he cites to several out-of-state cases that are easily distinguishable. In Riehl v. Cambridge Court GF, LLC, 226 P.3d 581 (Mont. 2010), the Supreme Court of Montana found an agreement unenforceable that contained, like the agreement here, an arbitration provision and a waiver of right to jury trial. Id. at 588. The parties entered into an agreement to admit the plaintiff's mother into specialized assisted living care. The Supreme Court of Montana held that the arbitration provision was unenforceable because (1) the agreement contained ambiguities; and (2) there was a lack of mutual consent between the parties to arbitrate. The court found the arbitration agreement to be ambiguous because it contained both a provision waiving the right to a jury trial and a provision stating that nothing in the agreement would construe limits on the living care resident's "inalienable legal rights." Id. The court then determined that the parties did not agree to arbitrate because both parties testified that they did not know the agreement required them to arbitrate or waived their right to a jury trial. This case provides no support for Ellington. First, the Supreme Court of Montana did not hold that the waiver of jury trial and arbitration provisions conflicted, as Ellington argues here. Instead, the conflict occurred between the arbitration clause and the provision about "inalienable legal rights," a phrase that is not used in the APA or EA. Moreover, the court found a lack of mutual consent based on the

parties' testimony regarding their lack of knowledge about the provisions, not because the agreement provisions conflicted.

Ellington also cites to <u>Bellman v. i3Carbon, LLC</u>, 563 F. App'x 608 (10th Cir. 2014), in which the Tenth Circuit held that there was no agreement to arbitrate when the plaintiffs signed a subscription agreement with a forum selection clause but did not sign the operating agreement that contained the arbitration provision. <u>Id.</u> at 614. The agreements, like the EA and APA here, were two separate agreements that were considered together as the parties' entire agreement. The Tenth Circuit did hold that the forum selection clause and arbitration clause were directly in conflict, which demonstrated a lack of a meeting of the minds. However, this is because the forum selection clause required that "[a]ny disputes arising out of . . . this Subscription . . . shall be adjudicated by a court of competent civil jurisdiction sitting in Denver, Colorado and nowhere else." <u>Id.</u> at 610. The clause specifically required the parties to resolve their disputes in court, while the arbitration provision specifically required the parties to resolve their disputes in arbitration, creating a clear conflict. Here, there is no forum selection clause. Ellington attempts to compare <u>Bellman</u> to the present case by describing the agreement in <u>Bellman</u> as consisting of one contract that clearly and unambiguously required arbitration and one contract that did not contain such a provision. Ellington is correct that one contract did not contain an arbitration provision but failed to mention that it did contain a forum selection clause, which was the basis for the Tenth Circuit finding the agreement ambiguous.

Ellington also cites to <u>Rockel v. Cherry Hill Dodge</u>, 847 A.2d 621 (N.J. App. Div. 2004), for support that conflicting provisions about arbitration evince a lack of mutual

assent. However, the issue in that case was that the contract contained two different arbitration provisions that were in conflict. Id. at 625. The same is true in the other two cases cited by Ellington. Ragab v. Howard, 2015 WL 6662960, at *6 (D. Colo. Nov. 2, 2015), aff'd, 841 F.3d 1134 (10th Cir. 2016) (finding no meeting of the minds as to agreeing to arbitrate because the parties entered into multiple agreements with arbitration clauses containing different terms); Souza-Bastos v. Fed. Auto Brokers, Inc., 2016 WL 3199488, at *2 (N.J. Super. Ct. App. Div. June 10, 2016) (finding a lack of mutual assent to agree to arbitrate when the contract consisted of three different documents with three different arbitration provisions). Here, there is only one arbitration provision.

In conclusion, none of the provisions cited by Ellington conflict with the arbitration clause, meaning that there is no ambiguity as to the requirement to arbitrate. Moreover, even if there were a conflicting provision, there is no basis under South Carolina law to interpret an ambiguous contract as one that lacks mutual assent, allowing the court to find that the parties did not agree to arbitrate. Nor do any of the out-of-state cases cited by Ellington support the court coming to that conclusion here.

## IV. CONCLUSION

For the reasons set forth above, the court dismisses the amended complaint and compels arbitration.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**February 28, 2019**
**Charleston, South Carolina**